UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LINDA E. LIGHTNER and GLENN LIGHTNER | ) ) ) |
| Plaintiffs | ) ) |
| v. | ) ) No. 3:04-CV-184-RM ) |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., an Affiliate of AMERICAN INTERNATIONAL GROUP, | ) ) ) ) ) |
| Defendant | ) |

OPINION AND ORDER

This declaratory judgment action arises from an automobile collision that occurred on April 22, 1999 in Wabash County, Indiana involving vehicles driven by Linda Lightner and Marcella Shepherd. Ms. Shepherd was found to be at fault for the collision and Mrs. Lightner settled her claims against Ms. Shepherd. Ms. Shepherd's insurance policy had limits of $25,000 for bodily injury and $5,000 for medical expenses. Mrs. Lightner alleges she suffered serious injuries and that Ms. Shepherd's policy limits prevented her full compensation in her action against Ms. Shepherd. Mrs. Lightner and her husband, Glenn Lightner, then sued National Union Fire Insurance Company, under whose policy they were covered for losses caused by uninsured or underinsured motorists. National Union properly removed

1

the case from state court; this court has jurisdiction under 28 U.S.C. §§ 1332 and 2201.

At issue here is the amount of uninsured/underinsured (UM/UIM) motorist coverage National Union provided to the Lightners at the time of the collision. National Union says its liability to the Lightners is capped at $50,000, and the Lightners contend the National Union policy covers them up to a $2,000,000 limit. The parties filed cross motions for summary judgment. For the reasons that follow the court agrees with the Lightners' position, grants their summary judgment motion, and denies National Union's cross-motion.

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). No genuine issue of material fact exists when a rational trier of fact could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the nonmoving party. Ritchie v. Glidden Co., 242 F.3d 713, 720 (7th Cir. 2001). "The mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004).

The party with the burden of proof on an issue must show that there is enough evidence to support a jury verdict in his favor. Lawrence v. Kenosha County, 391 F.3d 837, 842 (7th Cir. 2004).

The facts are essentially undisputed. On April 22, 1999, Jefferson Smurfit Corporation (now known as Smurfit Stone Container Corporation) employed Mr. Lightner as a Senior Division Engineer and Plant Manager in Wabash, Indiana. Jefferson Smurfit provided Mr. Lightner with a company-owned 1998 Ford Windstar for his use; Mrs. Lightner also was authorized to drive the Windstar. Jefferson Smurfit insured the Windstar and its authorized drivers (including both Mr. and Mrs. Lightner) under an insurance policy issued by National Union.

Mrs. Lightner was driving the Windstar on April 22, 1999 when Marcella Shepherd failed to stop at a stop sign and crashed her vehicle into the Windstar at the intersection of County Road 600 West and County Road 200 North in Wabash County, Indiana. The Lightners' daughter was a passenger in the Windstar when it was struck by Ms. Shepherd's vehicle, but she is not a party to the present suit. According to her affidavit, Mrs. Lightner sustained serious injuries in the collision that have caused her chronic pain and permanent mental impairment resulting in her being declared "disabled" by the Social Security Administration. She says she incurred medical expenses in excess of $30,000. National Union doesn't dispute Mrs. Lightner's description of her injuries and medical expenses.

3

After settling her claims against Ms. Shepherd (whose insurance policy had liability limits of $25,000 for personal injury and $5,000 for medical expenses), Mrs. Lightner sought additional recovery from National Union under the insurance policy Jefferson Smurfit had purchased to cover its company vehicles and their authorized drivers. The policy in effect on April 22, 1999 was policy number RM CA 320-98-51; it covered the period from April 1, 1999 to April 1, 2000. A form titled "Business Auto Declarations" summarized the coverages provided and the premiums charged by National Union.

The declarations form contained the following table summarizing the policy: Two items from this table are central to today's decision. First, the policy limit for liability coverage is $2,000,000. Second, the policy limit for uninsured motorist

| COVERAGES | COVERED AUTOS (Entry of one or more of the symbols from the COVERED AUTOS Section of the Business Auto Coverage Form shows which autos are covered autos) | LIMIT THE MOST WE WILL PAY FOR ANY ONE ACCIDENT OR LOSS | PREMIUM |
|---|---|---|---|
| LIAB. | 1 | $ 2,000,000 | $ 562,19 |
| PERSONAL INJURY PROTECTION (P.I.P.) (or equivalent No-fault cov) | 5 | SEPARATELY STATED IN EACH P.I.P ENDORSEMENT MINUS $ STATUTORY Deductible | $ INCLUDED |
| ADDED P.I.P (or equivalent added No-fault cov) | | SEPARATELY STATED IN EACH ADDED P.I.P ENDORSEMENT | $ |
| PROPERTY PROTECTION INS. (P.P.I.) (Michigan only) | | SEPARATELY STATED IN THE P.P.I. ENDORSEMENT MINUS $ Deductible FOR EACH ACCIDENT | $ |
| AUTO MEDICAL PAYMENTS | 2 | $ 5000 | $ INCLUDED |
| UNINSURED MOTORISTS (UM) | 6 | $ STATUTORY | $ INCLUDED |
| UNINSURED MOTORISTS (when not included in UM Cov.) | | $ | |
| PHYSICAL DAMAGE — COMPREHENSIVE COVERAGE | | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS MINUS | $ Ded. FOR EACH COVERED AUTO, BUT NO DED. APPLIES TO LOSS CAUSED BY FIRE OR LIGHTNING. | $ |
| PHYSICAL DAMAGE — SPECIFIED CAUSES OF LOSS COVERAGE | | | $25 Deductible FOR EACH COVERED AUTO FOR LOSS CAUSED BY MISCHIEF OR VANDALISM | $ |
| PHYSICAL DAMAGE — COLLISION COVERAGE | | | $ Deductible FOR EACH COVERED AUTO | $ |
| PHYSICAL DAMAGE — TOWING AND LABOR (Not Available in California) | | $ | for each disablement of a private passenger auto | $ |

FOR: NO ENDORSEMENTS APPLYING TO THIS COVERAGE PART AND MADE PART OF THIS POLICY AT TIME OF ISSUE:
SEE ATTACHED SCHEDULE
PREMIUM FOR ENDORSEMENTS $
ESTIMATED TOTAL PREMIUM $ 562,1
SURCHARGE $1,5

coverage is described as "STATUTORY." The row describing underinsured motorist

4

coverage is left blank, but under the words "UNDERINSURED MOTORISTS" is found the parenthetical qualifier: "(when not included in UM Cov.)".

National Union first issued this business automobile insurance policy to Jefferson Smurfit on April 1, 1995 under the policy number RMCA 135-05-02, and renewed the policy annually from 1995 to 2000. When Jefferson Smurfit first purchased this policy, its Risk Manager, Douglas Bachman, submitted a document supplied by National Union entitled "Rejection of Uninsured/Underinsured Motorists Coverage (Indiana)." This document identified itself as an "Endorsement" to policy number RMCA 135-05-02 and purported to be effective as of 12:01 A.M. on April 1, 1995 (the same day National Union's coverage of Jefferson Smurfit began).

The rejection form described some of the provisions found in IND. CODE § 27-7-5-2 (pertaining to the optional rejection of uninsured/underinsured motorist insurance coverage), and gave the insured party the following two options for rejecting UM/UIM coverage:

> In accordance with the Indiana Code (Section 27-7-5-2), amended, the undersigned insured (and each of them)—
>
> **(Applicable item marked [x])**
>
> [ ] agrees that the Uninsured/Underinsured Motorists Coverage afforded in the policy is hereby deleted.
> [ ] agrees that the property damage only portion of the uninsured motorist coverage provisions afforded in the policy is hereby deleted.

Plaintiffs' exhibit D. Mr. Bachman didn't "x" either of these two options. Instead, he hand wrote "25,000 / 50,000 / 10,000 Limits" immediately below these options, and signed his name on the signature line next to his notation.

The parties disagree about interpretation of the insurance contract. They specifically dispute what effect, if any, the purported waiver of UM/UIM motorist coverage should have on the amount of coverage National Union owes to the Lightners. The contract was formed in Indiana and the parties all base their arguments on Indiana law, so the court applies Indiana law. "The interpretation of a contract is a matter of law, so cases involving the interpretation of insurance contracts are particularly appropriate for summary judgment." Westfield Companies v. Knapp, 804 N.E.2d 1270, 1273-1274 (Ind. Ct. App. 2004) (citing Wright v. Am. States Ins. Co., 765 N.E. 2d 690, 692 (Ind. Ct. App. 2002)). Given the parties' essential agreement on the relevant facts, the court proceeds to interpret the contract and resolve the questions of law presented by the cross motions for summary judgment.

National Union bases its case on the rejection form signed by Mr. Bachman; it says the form clearly shows Jefferson Smurfit's intent to limit UM/UIM coverage to $50,000. The Lightners counter with at least five arguments for why the UM/UIM coverage is $2,000,000 instead of $50,000. One of the Lightners' contentions is that the rejection form is invalid, so the UM/UIM coverage must equal the policy's $2,000,000 liability limits. A determination regarding the validity of the rejection form is dispositive in this case, so the court

6

addresses the validity issue first, and need not address all of the Lightners' arguments.

Indiana law requires insurers in Indiana to offer UM/UIM coverage "in limits for bodily injury or death and for injury to or destruction of property not less than those set forth in IC 9-25-4-5".[1] IND. CODE § 27-7-5-2(a)(1). The UM/UIM statute goes on to state:

> The uninsured and underinsured motorist coverages must be provided by insurers for either a single premium or for separate premiums, in limits at least equal to the limits of liability specified in the bodily injury liability provisions of an insured's policy, unless such coverages have been rejected in writing by the insured. However, underinsured motorist coverage must be made available in limits of not less than fifty thousand dollars ($50,000). At the insurer's option, the bodily injury liability provisions of the insured's policy may be required to be equal to the insured's underinsured motorist coverage. Insurers may not sell or provide underinsured motorist coverage in an amount less than fifty thousand dollars ($50,000). Insurers must make underinsured motorist coverage available to all existing policyholders on the date of the first renewal of existing policies that occurs on or after January 1, 1995, and on any policies newly issued or delivered on or after January 1, 1995. Uninsured motorist coverage or underinsured motorist coverage may be offered by an insurer in an amount exceeding the limits of liability specified in the bodily injury and property damage liability provisions of the insured's policy.

IND. CODE § 27-7-5-2(a).

Under this statute, unless the insured rejects UM/UIM coverage in writing, insurers must provide UM/UIM coverage "in limits at least equal to the limits of

---

[1] IND. CODE § 9-25-4-5 requires the following minimum levels of liability coverage for Indiana drivers: $25,000 for bodily injury or death of one individual, $50,000 for bodily injury or death of two or more individuals in a single accident, and $10,000 for property damage in a single accident.

liability specified in the bodily injury liability provision of an insured's policy." IND. CODE § 27-7-5-2(a). The policy under which the Lightners were insured provided a bodily injury liability limit of $2,000,000, so in the absence of a written rejection, the statute would require National Union to provide at least $2,000,000 in UM/UIM coverage. National Union argues that Mr. Bachman's notation ("25,000 / 50,000 / 10,000 Limits") on the rejection form supplied a valid written rejection of UM/UIM coverage, and that this rejection capped the UM/UIM coverage at $50,000.

The Lightners contend Mr. Bachman's notation ("25,000 / 50,000 / 10,000 Limits") isn't a valid rejection of UM/UIM coverage. They correctly assert that the "25,000 / 50,000 / 10,000 Limits" notation is void as contrary to law. National Union recognizes in its reply brief that "an automobile insurer may not issue a policy of underinsured motorist coverage with limits of less that $50,000," and it says that $50,000 was "clearly the amount [of UM/UIM coverage] which Jefferson Smurfit intended to purchase." It is not so clear to the court that "25,000 / 50,000 /10,000 Limits" means a $50,000 limit.

Terms of contracts are based on the parties' objective manifestations of intent, not on secretly held, subjective understanding of the bargain. *See* <u>Mid-States Gen. & Mech. Contracting Corp. v. Goodland</u>, 811 N.E. 2d 425, 433 (Ind. Ct. App. 2004). Rather than connoting a straightforward $50,000 limit for UM/UIM coverage, Mr. Bachman's notation (viewed objectively) strongly suggests that coverage was to be limited to $25,000 or $50,000 or $10,000 depending on

8

the circumstances of a given loss. The likely source for the numbers in Mr. Bachman's notation is IND. CODE § 9-25-4-5, which establishes the minimum amounts of liability (or "financial responsibility") coverage Indiana motorists must have. Section 9-25-4-5 sets these limits at $25,000 for the bodily injury or death of one individual, $50,000 for the bodily injury or death of two or more individuals in a single accident, and $10,000 for property damage in a single accident.[2]

The court cannot read Mr. Bachman's "25,000 / 50,000 / 10,000 Limits" notation and pretend that it doesn't include two numbers that are less than 50,000. Mr. Bachman's objectively manifested intent was to limit UM/UIM coverage in at least some situations to $25,000 or $10,000. As IND. CODE § 27-7-5-2(a) states plainly: "Insurers may not sell or provide underinsured motorist coverage in an amount less than fifty thousand dollars ($50,000)." *See also* State Auto. Ins. Companies v. Shannon, 769 N.E. 2d 228, 233 (Ind. Ct. App. 2002). The rejection form on which National Union relies, then, contains contractual terms

---

[2] National Union submitted an affidavit purporting to be that of Mr. Bachman. The Lightners filed a motion to strike the affidavit because Mr. Bachman never signed it, and because they say consideration of it would violate the parol evidence rule. The court denies the Lightners' motion to strike as moot because even if considered, the affidavit doesn't help National Union. All Mr. Bachman's affidavit says is that Jefferson Smurfit's policy was to purchase UM/UIM coverage in the minimum amounts required by law, and that he intended his "25,000 / 50,000 / 10,000 Limits" notation on the rejection form to purchase the minimum amounts required by Indiana statute. The affidavit actually supports the conclusion that Mr. Bachman based his notation (erroneously) on IND. CODE § 9-25-4-5, which sets the minimum amounts of liability coverage for Indiana drivers. Nothing in the affidavit changes the fact that Mr. Bachman wrote dollar amounts on the rejection form that were less than $50,000, and that therefore ran afoul of IND. CODE § 27-7-5-2(a).

9

that contravene the law.³ Contractual language that is contrary to law is void and unenforceable. Sinn v. State, 609 N.E. 2d 434, 436 (Ind. Ct. App. 1993) ("an illegal contract is void") (citing Tolliver v. Mathas, 512 N.E. 2d 187 (Ind. Ct. App. 1987), *on rehearing*, 538 N.E. 2d 971).

In sum, Mr. Bachman's attempt to reject the default amount of UM/UIM coverage (here $2,000,000) was void because his notation on the rejection form contemplated underinsured motorist coverage limits that were below the statutory minimum of $50,000. In the absence of a valid written rejection of UM/UIM coverage, IND. CODE § 27-7-5-2(a) dictates that "uninsured and underinsured motorist coverages must be provided . . . in limits at least equal to the limits of liability specified in the bodily injury liability provisions of an insured's policy." Here, that bodily injury liability limit is $2,000,000, so as a matter of law the policy also provides for $2,000,000 in underinsured motorist coverage.

Although the invalidity of the rejection form is by itself dispositive, and requires the entry of summary judgment for the Lightners, an alternative route to the same result deserves some discussion. When interpreting insurance policies, Indiana courts follow the rule that "[a]ny ambiguity generated by the policy language is to be construed against the insurer and in favor of coverage for the

---

³ One case cited in both parties' briefs, Marshall v. Univ. Underwriters Ins. Co., 673 N.E. 2d 513 (Ind. Ct. App. 1996) (disapproved on other grounds by United Nat'l Ins. Co. v. DePrizio, 705 N.E. 2d 455, 461 (Ind. 1999)), validated a policy of underinsured motorist coverage with limits of $25,000 per person and $50,000 per accident. The old version of the UM/UIM statute that applied in Marshall didn't include the ban on the sale or provision of underinsured motorist coverage in an amount less than $50,000 (which took effect on January 1, 1995).

insured." Indiana Ins. Co. v. N. Vermillion Cmty. Sch. Corp., 665 N.E. 2d 630, 635 (Ind. Ct. App. 1996); *see also* Eli Lilly & Co. v. Homes Ins. Co., 482 N.E. 2d 467, 470 (Ind. 1985) (terms of an ambiguous insurance policy should be interpreted most favorably to the insured). A contract is ambiguous when its terms are reasonably susceptible of more than one meaning. *See e.g.,* Eli Lilly & Co. v. Homes Ins. Co., 482 N.E. 2d at 470.

This principle applies in a couple of ways to the business automobile insurance policy National Union issued to Jefferson Smurfit. First, it applies to Mr. Bachman's notation on the rejection form: "25,000 / 50,000 / 10,000 Limits." While this notation seems pretty clearly to contemplate some UM/UIM coverage limits of $25,000, $50,000, and $10,000, it is ambiguous in the sense that it gives no explanation of when these various limits should apply. Making sense of this notation requires a reader to make reference to Indiana's insurance statutes and, in that context, to infer the notation's most likely meaning. Construing this ambiguity in favor of coverage for the insured bolsters the court's conclusion that Mr. Bachman's notation on the rejection form sought to limit underinsured motorist coverage in ways contrary to law, and that it is accordingly void.

The insurance contract contains a second ambiguity, found on the declarations page. In the table summarizing the policy's coverages, the limit for UM/UIM[4] coverage is listed as "STATUTORY." The term "statutory" is susceptible

---

[4] The insurance table on the declarations page contains separate rows for *un*insured motorist coverage, and for *under*insured motorist coverage. However, the table makes clear that the two coverages (UM and UIM) may be lumped together in the *un*insured motorist category.

11

of at least two reasonable interpretations. "Statutory" could mean, as National Union urges, the minimum amount of UIM coverage required by the statute: $50,000.[5] But "statutory" just as easily could mean the default amount of underinsured motorist coverage required by the statute in the absence of a valid written rejection of such coverage, *i.e.*, "limits at least equal to the limits of liability specified in the bodily injury liability provisions of an insured's policy." IND. CODE § 27-7-5-2(a). National Union could have avoided any confusion by writing "statutory minimum" instead of simply "statutory," but it didn't. Resolving the ambiguity in favor of the Lightners requires reading "statutory" to mean the default amount of underinsured motorist coverage required by the statute. Understood in this way, the "statutory" limit on the declarations page provides for underinsured motorist coverage equal to the $2,000,000 policy limits for bodily injury liability coverage.

National Union cites three cases for the proposition that these ambiguities shouldn't be construed in favor of the Lightners because they weren't parties to

---

Immediately below the listing for *under*insured motorist coverage the table explains that *under*insured motorist coverage will be described only "when not included in UM [uninsured motorist] Cov." The row for *under*insured motorist coverage is left blank in the table, but National Union does not dispute that the policy covered losses caused by *under*insured motorists, so that coverage was necessarily included in the description of *un*insured motorist coverage found in the immediately preceding row. For this reason the row describing the *un*insured motorist coverage is the portion of the table that is relevant the parties' dispute about the amount of *under*insured motorist coverage the policy provided.

[5] IND. CODE § 27-7-5-2(a) permits an insured to reject underinsured motorist coverage altogether, making it somewhat inaccurate to say that $50,000 is the minimum amount of coverage permitted by the statute. $50,000 is the statutory minimum only when some level of underinsured motorist coverage is provided.

12

the insurance contract and didn't pay (at least not directly) the insurance premiums. Indiana Lumbermens Mut. Ins. Co. v. Statesman Ins. Co., 291 N.E. 2d 897 (Ind. 1973); Earl v. Am. States Preferred Ins. Co., 744 N.E. 2d 1025 (Ind. Ct. App. 2001); Burkett v. Am. Family Ins. Group, 737 N.E. 2d 447 (Ind. Ct. App. 2000). The parties to the contract here were National Union and Mr. Lightner's employer, Jefferson Smurfit, and it appears Jefferson Smurfit paid the insurance premiums to National Union.

National Union's cited cases differ from today's case because not one of the plaintiffs in those cases was seeking to recover from a defendant insurer under a policy that had been procured for the plaintiff's benefit. Indiana Lumbermens Mut. Ins. Co. v. Statesman Ins. Co., 291 N.E. 2d at 898-899 (plaintiff insurance company insured homeowners whose faulty staircase caused injury to a delivery man; plaintiff insurance company settled claim with injured delivery man, then sought indemnification from defendant insurance company that insured delivery truck driven by injured delivery man; court held truck's insurance policy should be construed neutrally because plaintiff insurance company wasn't a party to the contract and "never paid a penny's premium to the [defendant] insurer"); Earl v. Am. States Preferred Ins. Co., 744 N.E. 2d at 1026-1027 (plaintiff was injured in automobile collision by the negligence of defendant insurance company's insured; court held that insurance policy issued by defendant should be construed "from a neutral stance" because plaintiff was a "third party," and was not the "insured" under the contract); Burkett v. Am. Family Ins. Group, 737 N.E. 2d at 450-453

13

(plaintiff was seriously injured in automobile collision due to negligence of grandson of defendant insurance company's insured; court held that even if insurance policy issued by defendant were ambiguous it should be construed neutrally because plaintiff wasn't a party to the contract).

Unlike these three cases, the insurance policy at issue here is one purchased by Jefferson Smurfit for its own protection and for the protection of its employees and their families, including Mr. Lightner and his wife. Even if the Lightners were not parties to the contract and didn't directly pay the premiums to National Union, they were insured by the very policy they now ask the court to construe — a policy procured, at least in part, for their own benefit and protection. The Lightners properly seek a favorable interpretation of ambiguities in the business automobile policy issued by National Union, a policy that directly covered Mrs. Lightner as a driver and the Ford Windstar she was driving.

For the reasons stated above, the court declares as a matter of law that policy number RM CA 320-98-51 issued by National Union Fire Insurance Company of Pittsburgh, Pennsylvania which was in effect on the date of Mrs. Lightner's alleged injuries, April 22, 1999, provides uninsured/underinsured motorist coverage up to a policy limit of $2,000,000. Accordingly, the Lightners' motion for summary judgment [docket no. 27] is GRANTED, and National Union's cross motion for summary judgment [docket no. 29] is DENIED. The Lightners' motion to strike the affidavit of Douglas Bachman [docket no. 33] is DENIED AS MOOT.

SO ORDERED.

ENTERED: May 31, 2005

/s/ Robert L. Miller, Jr.
Chief Judge
United States District Court